# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**
May 5, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ROBERT SIBURT,**
**Claimant Below, Petitioner**

**vs.)    No. 15-0508** (BOR Appeal No. 2049772)
                    (Claim No. 2014001646)

**ALLIANCE COAL, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Robert Siburt, pro se, appeals the decision of the West Virginia Workers' Compensation Board of Review. Alliance Coal, LLC, by Lucinda Fluharty, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated April 30, 2015, in which the Board affirmed an August 18, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's August 28, 2013, decision to deny the claim and the August 28, 2013, decision to deny a request for a lumbar spine MRI. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Siburt, a shuttle car operator for Alliance Coal, LLC, asserts that he was injured in the course of and as a result of his employment on May 31, 2013. Mr. Siburt did not report an injury until June 10, 2013, when he completed a report of injury alleging that he injured his hip, right leg, and lower back while building a wall on the beltline at work.

1

Alliance Coal, LLC, introduced Mr. Siburt's previous medical history. The records indicate that he was seen on September 30, 2004, at an emergency room with lower back pain. A lumbar strain was diagnosed. On May 25, 2005, Mr. Siburt was treated by Ralph Wood, D.O., for increasing low back pain sustained while moving a refrigerator at his home. A lumbosacral strain was diagnosed. Approximately a month later, Mr. Siburt sought treatment at Reynolds Memorial Hospital for low back pain. He asserted he was carrying a ladder and stepped in a hole, injuring his lower back. A lumbar sprain was diagnosed. A month later, on July 18, 2005, Mr. Siburt presented to Ralph Wood, D.O., after a four wheeler accident. He reported that he landed on his left mid-back area. A contusion of the thoracic and lumbosacral spine was diagnosed. On November 8, 2005, Mr. Siburt sought treatment from Gregory Wood, D.O., because he was lifting a transmission at home and experienced low back pain. A low back strain was diagnosed. On May 25, 2009, Mr. Siburt presented to Reynolds Memorial Hospital with low back pain. A muscle strain was diagnosed. On August 20, 2012, Mr. Siburt sought treatment from Dr. Wood for moderate to severe lower back pain. Mr. Siburt was examined, and a strain of the lumbar spine was diagnosed.

On June 3, 2013, the day of the alleged injury, he was seen at Ohio Valley Medical Center with hip, leg, and back pain. It was noted that he had an onset of right hip pain that radiated up his back and down his leg the prior day. No injury was noted in the medical records but Mr. Siburt later testified that he was injured at work. Sciatica was diagnosed. Mr. Siburt was referred to Dr. Wood for follow-up care. Three days later, Mr. Siburt presented for follow-up at Health Center-Tunnel Ridge. He reported continued sciatic pain. It was noted there was no work injury and that Mr. Siburt fell on concrete at home. A muscle strain was diagnosed. On June 10, 2013, Mr. Siburt sought treatment at Ohio Valley Medical Center. At that time, a report of injury was filled out alleging he injured his hip, right leg, and lower back on May 31, 2013, while building a wall at work.

From July 30, 2013, through August 27, 2013, Mr. Siburt was treated at Wood Health Clinic for his alleged work injury. A lumbar spine strain was diagnosed and authorization for an MRI of the lumbar spine was requested. The claims administrator denied the claim on August 28, 2013. By separate Order on the same day, the claims administrator denied the request for a lumbar MRI.

On December 4, 2013, Mr. Siburt was deposed. He stated that his last day of work was on May 31, 2013. Mr. Siburt insisted that he mentioned his sore back to his fellow workers Tim Rager and Jim Ullom that day. However, he did not report the injury to his supervisor because he thought it would get better over the weekend. He then sought treatment at Ohio Valley Medical Center after realizing his back was not improving. Sciatica was diagnosed and injections were administered. Mr. Siburt stated that when he returned home from the emergency room, he had an altercation with his girlfriend. The police were called, and he was taken to jail, where he stayed for two days. Mr. Siburt testified that he was scheduled to work on June 4, 2013, but could not call or report because he was incarcerated. He was released from jail on June 5, 2013. Mr. Siburt asserted that he immediately contacted his shift boss and reported the alleged injury after he was released from jail. Mr. Siburt went to work the next day to complete paperwork and was instructed to go home. He was terminated on June 6, 2013. Mr. Siburt stated that he sought

treatment at Ohio Valley Medical Center again on June 10, 2013, for continued pain. An injection was administered and medications were prescribed. Mr. Siburt eventually sought treatment with Dr. Wood, who recommended an MRI and physical therapy. Mr. Siburt testified that he had not experienced any of his current symptoms prior to the May 31, 2013, injury. Mr. Siburt emphasized that he did not tell the doctor on June 3, 2013, that he hurt his back at work because he was in a lot of pain and just wanted to finish the exam.

Alan Lander, human resource manager for Alliance Coal, LLC, authored an affidavit on January 17, 2014. Mr. Lander stated that he met with Mr. Siburt on June 6, 2013, to discuss his unexcused absences from work on the 3rd, 4th, and 5th of June. Prior to June 6, 2013, Mr. Lander received no information that indicated Mr. Siburt sustained a work injury on May 31, 2013. Mr. Siburt was suspended on June 6, 2013, due to absenteeism. Mr. Lander stated that he noticed that Mr. Siburt was limping. Mr. Siburt told him his sciatica was bothering him, and no injury was mentioned. Mr. Siburt was fired over the telephone on June 7, 2013, due to his unexcused absences. At that time, Mr. Siburt told Mr. Lander he had twisted his back at work. Mr. Siburt then presented to Mr. Lander on June 10, 2013, and told him he had missed work those days due to his sore back from the injury. Mr. Lander stated that he informed Mr. Siburt that he knew he was incarcerated on the days he missed.

James Cash, a shift supervisor for Alliance Coal, LLC, authored an affidavit on February 10, 2014. Mr. Cash advised he had reviewed Mr. Siburt's deposition transcript. He stated that Mr. Siburt was scheduled to work on June 3, 2013, and did not report for work. Mr. Cash stated that he had heard Mr. Siburt was in jail. Mr. Cash also stated that he had no recollection of having received a voice-mail from Mr. Siburt advising he had been injured. A phone log from Verizon Wireless was obtained by Mr. Cash and submitted into evidence. He noted two incoming calls on June 3, 2013, neither of which was from Mr. Siburt. Mr. Cash admitted Mr. Siburt contacted him on June 5, 2013. However, the call was to inform Mr. Cash that he had missed work because his transmission was broken.

On April 21, 2014, Amanda O'Hara, Mr. Siburt's girlfriend, completed an affidavit. Ms. O'Hara stated that she and Mr. Siburt went to the office of Mr. Lander on June 10, 2013, for a meeting. Mr. Siburt told Mr. Lander he was hurt at work and received treatment at the emergency room. Ms. O'Hara stated that when Mr. Siburt got home he could not do much and was on medications prescribed by the emergency room. He was told his medical bill would be covered under the Consolidated Omnibus Budget Reconciliation Act. Ms. O'Hara further asserted that Mr. Siburt was told he should have reported his injury as soon as it happened, however, since he failed to do so, he would suffer negative consequences.

The Office of Judges affirmed the claims administrator's decision on August 18, 2014, because it determined that no injury had occurred in the course of and as a result of Mr. Siburt's employment. The Office of Judges questioned the circumstances leading to the report of injury and Mr. Siburt's credibility. Mr. Siburt testified that he telephoned Mr. Cash on June 3, 2013, after he was seen at Ohio Valley Medical Center and told him he had been treated for a work injury. However, the cell phone records from Mr. Cash show no call. The Office of Judges determined that the first time that Mr. Siburt reported his injury was on June 10, 2013, three days

after he was discharged for unexcused absences. The Office of Judges also found that the June 6, 2013, note from Tunnel Ridge Health Clinic listed no work injury and indicated the mechanism of injury was a slip and fall accident on concrete at home. The Office of Judges found that the medical record also supported another mechanism of injury. The record indicated Mr. Siburt had bruises on his buttocks, which was consistent with falling on concrete at home and not consistent with his testimony of an alleged work injury. Overall, the Office of Judges determined that Mr. Siburt failed to meet his burden to show that a work injury occurred. Because he could not show that an injury occurred, the Office of Judges also denied treatment related to the alleged injury. The Board of Review adopted the findings of the Office of Judges and affirmed its Order on April 30, 2015.

After review, we agree with the consistent conclusions of the Office of Judges and Board of Review. Mr. Siburt carries the burden to show that his injury was received in the course of and as a result of his employment. The Office of Judges was well within reason to determine that Mr. Siburt's testimony was unreliable because of the numerous inconsistencies in his testimony. Furthermore, the report from Tunnel Ridge Health Clinic strongly indicates that Mr. Siburt's problems were related to a slip and fall accident that occurred at his home. Because the only evidence of a work-related injury was Mr. Siburt's unreliable testimony and the other evidence strongly supported another mechanism of injury, the Office of Judges and Board of Review were not in error for affirming the rejection of the claim. Because no compensable injury occurred it was also proper for an MRI to be denied.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  May 5, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II